IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In re the Marriage of: | ) |
| | ) No. 31297-6-III |
| DREW C. OLSEN, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| MEGAN M. OLSEN, | ) PUBLISHED OPINION |
| | ) |
| Respondent. | ) |

SIDDOWAY, C.J. — After Drew Olsen, his lawyer, or both failed to appear for trial in this marriage dissolution action a third time, the superior court proceeded to hear Megan Olsen's evidence, on the basis of which it issued a memorandum decision and later entered final orders. Mr. Olsen moved under CR 60(b)(1) for relief from an "order of default" that the trial court entered following the conclusion of Ms. Olsen's evidence and from the court's final orders. The court denied the motion, leading to this appeal.

Although the trial court and the parties referred to the single-party trial that took place and to the resulting final order as "default" proceedings, they were default proceedings only in the broadest sense of that word—for purposes of the civil rules and the analysis on appeal, there was a trial, and it was on the merits. Under well settled law,

Mr. Olsen bears responsibility for the negligence of his lawyer and is not entitled to relief from the trial outcome. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

After nine months of marriage, Megan and Drew Olsen separated and Ms. Olsen moved to Kansas with their only child. In October 2010, she filed an action for dissolution of the marriage in Kansas. A trial took place in Kansas at the conclusion of which the court granted Ms. Olsen a divorce and addressed child custody issues, but declined to address financial issues, concluding that it lacked personal jurisdiction over Mr. Olsen.

Mr. Olsen had initiated this dissolution proceeding in Spokane County in May 2011, and it became the forum through which the parties would resolve issues of child support, divide their property and debt, and apportion liability for attorney fees. Trial in Spokane was originally set for January 2012 but was continued by agreement of the parties. They then agreed to mediate and set a March date for mediation, but Mr. Olsen's former attorney, Kevin Mickey, failed to appear. The mediation proceeded with Mr. Olsen participating pro se, but was unsuccessful.

In anticipation of the new, April 16, 2012 trial date, Ms. Olsen filed a domestic trial management joint report and served it on Mr. Mickey. Her report projected a half day trial, that only she and her ex-husband would be called as witnesses, and estimated

one hour's testimony from each. No joint trial management report was submitted on Mr. Olsen's behalf.

On April 16, only Ms. Olsen's lawyer appeared for trial. (He had obtained agreement that Ms. Olsen could testify telephonically from Kansas.) The trial court chose not to proceed; instead, it continued the trial to May 14. In an "Order Regarding Trial" entered on April 18, the trial court recounted what had occurred on April 16 and ordered that an amended domestic case schedule order "shall be sent to the office of both the attorney for the Petitioner, and the attorney for the Respondent, as well as directly to the Petitioner." Clerk's Papers (CP) at 87. It further ordered that "[i]f neither the Petitioner, nor an attorney for the Petitioner appears for trial on May 14, 2012, a default will be entered." *Id.*

Lawyers for both parties appeared at the time set for trial on May 14, but Mr. Mickey reported to the court that Mr. Olsen was unavailable for trial that day. The court again rescheduled the trial, this time to commence at 9 a.m. on May 16.

On May 16, Ms. Olsen's lawyer arrived at court at the appointed hour, only to learn that Mr. Mickey had called the court that morning, claimed that he was outside the courtroom suffering from chest pains, and stated he was going to the hospital. The court advised Mr. Mickey by telephone message that trial would commence at 1:30 p.m. unless he provided documentation from a healthcare provider that a health issue prevented him from attending.

Ms. Olsen's lawyer returned to court at 1:30 p.m. No further word or documentation had been received concerning Mr. Mickey's reported medical emergency. Mr. Olsen had not appeared in the courtroom that morning nor did he appear at 1:30. The trial court proceeded with trial with neither Mr. Mickey nor Mr. Olsen present.

Ms. Olsen testified by telephone and was questioned by the trial court. She offered 14 exhibits that were admitted. In an exercise of caution, Ms. Olsen's lawyer, who was aware of issues contested by Mr. Olsen from filings, communications with Mr. Mickey, and the mediation, brought those issues to the attention of the court and questioned Ms. Olsen about them.

At the conclusion of Ms. Olsen's evidence, the trial court stated it would take the matter under advisement. Ms. Olsen's lawyer expressed concern that it would take several weeks for the court to prepare its decision and for him to present final documents and, "[i]n the interim, something is going to happen, and I think it would be good to have an Order of Default." Report of Proceedings (RP) at 73. The trial court responded,

> [B]efore we go, why don't you prepare a general order that indicates today
> was the time and place for trial, neither petitioner or his client [sic]
> appeared, the Court went forward with trial, and Mr. Olsen is in default,
> and I'll sign an order.

*Id.* Elaborating, the trial court described the order to be prepared and entered as "[s]omething that I can sign so that if Counsel or his client call my office, for example, [my judicial assistant] could advise that the Court entered an Order of Default today."

4

RP at 74. Ms. Olsen's lawyer prepared an order and the trial court signed it. On June 13, the court issued a memorandum decision resolving the parties' disputes.

Attorney Jason Nelson substituted as counsel for Mr. Olsen not long thereafter and moved for relief from the trial court's order of default and its later-entered findings and conclusions, order for support, child support worksheet, and order re dissolution issues. He relied on CR 60(b)(1) and asserted an irregularity in Ms. Olsen's obtaining of the judgment. As support for the motion, Mr. Olsen testified by declaration that he had been a diligent client, had provided Mr. Mickey with information and evidence needed to present his position on disputed issues, and had not been told by Mr. Mickey about the April 16 trial date. He testified that he *had* been told about the May 16 trial date and had traveled to the courthouse for trial on that date, but was informed by Mr. Mickey that the trial was going to be continued due to Mr. Mickey's heart issues and that he should not enter the courtroom. He testified that he was unaware that trial had gone forward that afternoon until told by Mr. Mickey long after the fact. Mr. Olsen's declaration asserted, "I do not believe the court would have made the same findings and orders if it had all of the information," and then recounted facts that Mr. Olsen believed undercut the trial court's findings on disputed issues. CP at 155.

The trial court conducted a hearing on the CR 60(b) motion and issued an order denying it several days later. Mr. Olsen appeals the court's denial of his motion for relief from the final orders reflecting the outcome of the trial.

5

ANALYSIS

Mr. Olsen argues that the trial court abused its discretion in denying his motion for relief from the court's final orders because his lawyer's medical condition or disability effectively deprived him of representation, thus constituting an irregularity in the proceedings sufficient to support vacating the orders. He submits that because the trial court entered an order of default, he is entitled to the liberal application of CR 60(b) that obtains when a party seeks to set aside an order of default or default judgment.

Ms. Olsen criticizes Mr. Olsen for failing to file a motion for reconsideration or timely appeal the trial court's final orders. Her principal defense against the appeal, however, is that Mr. Olsen failed to make the showing required by CR 60(b)(1) to obtain relief from what she contends was a final order on the merits, not a default order.

We first address Ms. Olsen's argument that Mr. Olsen should have moved for reconsideration or appealed the trial court's rulings and Mr. Olsen's argument that the court's orders were orders of default, implicating a liberal standard for affording relief under CR 60(b). We then address whether the trial court abused its discretion in refusing to vacate the orders and grant a new trial.

*1. Mr. Olsen was not required to resort first to reconsideration or appeal.*

Ms. Olsen argued below and suggests again on appeal that a motion to vacate is not a substitute for appeal and that "Mr. Olsen was required to appeal the court's order or file for reconsideration." CP at 177 (boldface and capitalization omitted). But Mr. Olsen

6

did not argue that the court's findings and conclusions were unsupported by the evidence that it heard on May 16. And in arguing the motion, Mr. Olsen's lawyer said, "There's no allegation that the Court committed legal error." RP at 79.

Instead Mr. Olsen sought to demonstrate that *additional* evidence Mr. Olsen would have presented at trial, had he been present, might have changed the result, and to persuade the court that Mr. Mickey's deficient representation amounted to an "irregularity" under CR 60(b)(1). *Id.*

Implicitly, Mr. Olsen conceded that the evidence presented by Ms. Olsen's lawyer was sufficient to uphold the trial court's findings and that the court's findings supported its conclusions. With that concession, it was pointless for him to move for reconsideration or appeal the findings or conclusions. And since Mr. Olsen had not been present or represented at the trial, he had raised no objection to the proceedings the denial of which he could appeal. Under the circumstances, a posttrial challenge to the proceedings based on irregularity was a reasonable way to proceed.

> 2. *The trial court's findings, conclusions, and final orders reflected the court's decision on the merits, not a default.*

Most federal circuit courts have held that a district court may enter default against a party who fails to appear for trial under parallel Fed. R. Civ. P. 55 and, where the default is initiated by the court, may do so without notice to the absent party.[1] They do so

---

[1] *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982

based on the rule's language that default must be entered against a party who has been shown to have "failed to plead *or otherwise defend*." FED. R. CIV. P. 55(a) (emphasis added). Washington courts have construed CR 55 differently, however, holding that a judgment of default may not be obtained against any party who initially appears and defends. *In re Marriage of Daley*, 77 Wn. App. 29, 31, 888 P.2d 1194 (1994). This is consistent with the minority federal view.[2] The difference in practice might explain the number of reported and unreported Washington decisions in which there is confusion over whether a failure to appear at trial constitutes a default.

Nonetheless, it is well settled Washington law and also the view of federal courts that if one side fails to appear on the date set for trial, a single-party trial can proceed and the outcome of the trial will be a judgment on the merits, not a judgment by default. In

F.2d 686, 692-93 (1st Cir. 1993) (default judgment entered against defendant who failed to attend trial; no notice required where entered on court's own motion); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) (district court properly treated defendants' withdrawal from participation in litigation as a basis for entering default); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992) (default judgment entered against party who failed to comply with court order to retain counsel and appear at trial); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (entry of default judgment authorized under Fed. R. Civ. P. 55 because of defendants' failure to appear at hearings or respond to notices served by court); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 854 (8th Cir. 1996) (failure to respond to magistrate's orders, comply with pretrial requirements and attend pretrial conference was a sufficient basis for entering default judgment); *cf. Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1139 (9th Cir. 1989) (per curiam) (relying on court's inherent authority to enter default judgment for failure to attend pretrial conference and trial).

[2] *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949); *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys. Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

*Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, the court identified CR 40(a)(5) as "remov[ing] absence of an adverse party as an impediment to trial," quoting its language that either party, after notice of trial, may bring the issue to trial, "'and in the absence of the adverse party, unless the court for good cause otherwise directs, may proceed with [the] case.'" 34 Wn. App. 392, 394-95, 661 P.2d 609 (1983) (quoting CR 40(a)(5)). A decade later in *Daley*, a dissolution case in which the husband did not appear for trial, the appellate court contrasted the default judgment that the wife was *not* entitled to take, with her the right to go forward with trial in her husband's absence:

> The situation would certainly have been different had [the wife] proceeded with her case. Specifically, if she had proceeded to trial and presented evidence on the record, then the trial court would have had the authority under CR 52 to enter findings, conclusions, and judgment without notice to [the husband].

77 Wn. App. at 32; *see also Stanley v. Cole*, 157 Wn. App. 873, 880, 239 P.3d 611 (2010) ("When a tribunal considers evidence, the resulting judgment is not a default judgment even if one party is absent."). For federal authority, see, e.g., *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949) (if a default judgment is not available and the opposing party and his lawyer fail to appear, "[t]he plaintiff might proceed, but he would have to prove his case"); and *Solaroll Shade & Shutter Corp. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("If the defendant has answered the complaint but fails to appear at trial, . . . the court can proceed with the trial. If the

plaintiff proves its case, the court can enter judgment in its favor although the defendant never participated in the trial.").

Here, the trial court's order entered on May 16 stated that it was an "order of default," but that was a misnomer. The essence of a default judgment under our civil rules is that it determines liability in favor of the party securing the judgment without requiring that party to meet its burdens of production or proof.[3] In this case, Ms. Olsen had already presented her evidence and rested before the possibility of entering an "order of default" was even raised. The trial court's memorandum decision and subsequent orders were based on her evidence, and its orders could be challenged on appeal if her evidence had been insufficient. The discussion between Ms. Olsen's lawyer and the court about entering the so-called order of default makes clear that its purpose was to make a record that the trial had gone forward in Mr. Olsen's absence and that the evidence was closed.

We determine the nature of an order by examining its substance, object, and purpose, not what a party or the court chose to call it. *Cf. Seal v. Cameron*, 24 Wash. 62,

---

[3] *See* CR 4(b)(1)(iii) (summons shall provide notice that a failure to defend will result in judgment by default); CR 37(b)(2)(C) (sanctions for failure to obey a discovery order may include rendering a judgment by default against the disobedient party); CR 54(c) (every final judgment other than a judgment by default shall grant relief to which party in whose favor it is rendered is entitled); CR 55(b) (authorizing entry of judgment of liability without proof against a defendant who has failed to appear, plead, or otherwise defend).

64, 63 P. 1103 (1901) (recognizing what was mislabeled a "motion" as a demurrer). Because the orders from which Mr. Olsen was entitled to seek relief under CR 60(b) were not default orders in substance, we reject his position that his right to relief under CR 60(b) should be determined under the relatively liberal standard for relief from a default judgment.

3.      *Mr. Olsen fails to demonstrate an abuse of discretion by the trial court.*

In *Barr v. MacGugan*, 119 Wn. App. 43, 78 P.3d 660 (2003), Division One of our court recognized a narrow exception to the general rule that a lawyer's negligence can never constitute grounds for vacating a judgment under CR 60(b). The exception applies when the agency relationship between lawyer and client "has disintegrated to the point where as a practical matter there is no representation." *Id.* at 48. Mr. Olsen argues that Mr. Mickey's health or disability-related lapses left Mr. Olsen without representation as a practical matter, and that the trial court therefore abused its discretion in denying him relief under CR 60(b)(1).

CR 60(b)(1) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . [m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." Mr. Olsen asserts an irregularity. "An irregularity is usually defined as a departure from some procedural rule or regulation, unrelated to the merits of the case." 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 60, at 611 (6th ed. 2013) (citing *Summers v. Dep't of Revenue*, 104

11

Wn. App. 87, 14 P.3d 902 (2001)). "A trial court's denial of a motion to vacate under CR 60(b) will not be overturned on appeal unless the court manifestly abused its discretion." *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000).

Mr. Olsen would have us expand *MacGugan*'s exception excusing clients from responsibility for their lawyer's procedural defaults. But if we were to revisit the exception, it would probably be to narrow it. In recognizing the exception, *MacGugan* looked to federal cases and relied upon the Ninth Circuit's decision a year earlier in *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002). Since then, the United States Supreme Court has been willing to excuse a client from responsibility for her lawyer's procedural defaults in the case of abandonment, but only where there is evidence of near-total abandonment. In *Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012), abandonment was found where two appointed lawyers who had provided postconviction representation to a capital prisoner left their Wall Street law firm for other employment in which they could no longer represent him, left no forwarding address, and provided no notice to the client or the court. In *Holland v. Florida*, a petitioner alleged abandonment "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." 560 U.S. 631, 659, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (Alito, J., concurring in part and concurring in the judgment). It is only where an attorney "'is not operating as [the client's] agent in any meaningful sense of that word,'"

that the Court has excused the client from responsibility. *Maples*, 132 S. Ct. at 923 (quoting *Holland*, 560 U.S. at 659 (Alito, J., concurring in part and concurring in the judgment)).

Under either view of the exception, Mr. Olsen fails to demonstrate an abuse of discretion by the trial court. To begin with, a party challenging the denial of a motion for relief from a judgment cannot prevail on appeal simply because the trial court *could* have vacated the judgment. Instead, he must demonstrate a basis for relief from the judgment so compelling that the trial court had *no tenable basis for refusing* to vacate.

In this case, Mr. Olsen's evidence of Mr. Mickey's several absences over a two-month period of asserted health problems demonstrates negligence; it does not demonstrate abandonment. The trial court did not abuse its discretion in refusing to vacate its final orders.

Ms. Olsen requests an award of costs and reasonable attorney fees on appeal pursuant to RAP 18.1(a) and RCW 26.09.140. We may exercise discretion to award attorney fees on appeal after considering the financial need of the requesting party, the other party's ability to pay, and the arguable merits of the issues raised on appeal. *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006).

13

No. 31297-6-III
*In re Marriage of Olsen*

Both parties filed timely financial declarations. After considering all, we decline to award attorney fees or costs.

Affirmed.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

14