# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 59283-5-II |
| PATTI ELMER CUTLER, | |
| Respondent, | |
| and | |
| ALAN GERALD CUTLER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Timothy South represented Alan Cutler in marriage dissolution proceedings where there was a disputed issue about two pieces of real property, and Cutler asserted they should be characterized as his separate property. After South's mother passed away, South's grief prevented him from promptly responding to discovery requests and he failed to attend a hearing. As a result, the trial court entered a default order against Cutler and eventually held a trial where South was prevented from presenting Cutler's case. Despite his failures, South maintained contact with Cutler and actively represented Cutler until after trial. The trial court found the disputed properties were community property and ordered Cutler to pay his spouse for her share of their value. Months after the trial, Cutler, represented by different counsel, filed a motion to vacate the final dissolution order, which the trial court denied.

Cutler argues that the trial court erred by denying his motion to vacate the final dissolution order under CR 60(b)(11) because South's depression was an extraordinary circumstance that

deprived Cutler of representation. Because South continued to take actions as Cutler's representative throughout the case, Cutler was not diligent despite his awareness that South was making mistakes in his case, and Cutler signed a response agreeing that the real property at issue was community property, we affirm.

FACTS

In May 2020, Patti Wise (formerly Cutler) filed for dissolution of her marriage to Alan Cutler. Cutler was served with a summons and petition stating that a response was due within 20 days.

In June 2020, Cutler hired Timothy South as his attorney for the dissolution proceedings. In a statement of issues that South submitted to the court, Cutler contended that two contested pieces of real property were his separate property.

The trial court scheduled a trial readiness hearing and trial for September 2022. Before this hearing, South informed Cutler that South's mother was in the hospital and Cutler said he understood the resulting delay. At the trial readiness hearing, South requested a continuance "due to some urgent family matters." Clerk's Papers (CP) at 18 (capitalization omitted). The trial court granted South's motion for a continuance. The trial court eventually set the new trial date for February 2023.

Initially, South was responsive to discovery requests from Wise. However, in August 2022, Wise's counsel sent South additional requests for discovery and asked whether South planned to file a response to Wise's dissolution petition. In early September, after Wise's counsel sent a follow-up email, South told Wise's counsel that he had a family emergency but would file a response. Between September and December, Wise's counsel reached out to South four more times

without an answer. South did not file a response nor did he respond to the pending discovery request.

On January 5, 2023, Wise sought default judgment against Cutler. The same day, Wise filed a motion in limine requesting that South be prohibited from presenting Cutler's case at trial for failure to respond to discovery requests. The trial court scheduled a hearing for these motions on January 24. South later said he received a document with the date of the hearing as he was leaving his office one afternoon but "set it aside and never looked at it again." CP at 127. South called Cutler a day before the hearing and said that he had "screwed up" by failing to file a response. CP at 285.

South did not appear at the hearing, and the trial court granted both of Wise's motions. The trial court found Cutler in default and ordered that the court "may sign orders and hold hearings in this case without notice to the defaulted party." CP at 71. The trial court also entered an order in limine ordering that Cutler could not present testimony or evidence at trial, nor could he "present his case at trial" because he had not filed a response to the dissolution petition. CP at 68. The trial court did not strike the upcoming trial readiness hearing for the February trial date.

On January 31, the trial court held the previously scheduled trial readiness hearing. South attended this hearing but did not inform Cutler about it. During this hearing, South said he would file a motion to set aside the default order. The trial court stated that it would address the motion to set aside default on the trial date. The next day, South told Cutler that he could "fix every[]thing" if Cutler signed the response to the petition. CP at 285. South also assured Cutler that "he had everything under control." CP at 129.

On February 3, 2023, South filed the response to Wise's 2020 dissolution petition, but did not file a motion to set aside the default order. In the response, South checked a box indicating that Cutler agreed with Wise's description and characterization of the real property stated in her petition. The petition characterized the disputed properties as community property. Cutler signed the response.

South assured Cutler that Cutler need not attend court on February 10, the day set for trial, because the trial court would only "talk about the default notice" and would set a different trial date. CP at 285. In her pretrial memorandum, Wise argued that the contested properties were community property.

Cutler did not attend court on February 10. South appeared and argued that the case was not set for trial that day. South also argued that the trial court improperly entered findings in the default order that were not included in Wise's petition, but the trial court disagreed and allowed the trial to go forward. Applying the order in limine, the trial court prohibited South from presenting any testimony or other evidence at trial. Wise called witnesses and presented exhibits in support of her trial memorandum requests. The trial court orally granted Wise's proposed property division. In a final dissolution order, the trial court determined that the contested properties were community property and ordered Cutler to pay Wise a $367,500 monetary judgment for her share of the value of these properties. The court also ordered Cutler to pay $5,000 of Wise's attorney fees.

Cutler claimed that he tried to contact South several times on the day of trial without a response. Six days later, South called Cutler and admitted he had "made a big mistake" and "his mind was not in it since his [m]other passed away." *Id.* South stated that February 10 "was the

actual court trial and that he was not prepared for it." *Id.* South said that the situation "could be fixed" but that Cutler would have to "find another attorney to fix this whole mess." *Id.*

On February 26 Cutler filed a grievance against South with the Washington State Bar Association (WSBA). Cutler hired a new attorney who filed a notice of substitution in May 2023.

South initially failed to respond to the grievance or attend the mandatory WSBA deposition. In August, South responded with a letter and explained his performance on Cutler's case:

> The recent passing of my mother, whom I had been caring for the past three years affected me more than I realized. The clinical depression of which I have been diagnosed for many years, reoccurred in a devious way. I very irresponsibly buried my head in the sand and hoped this would all blow over, knowing well that it would not.

CP at 127.

In October 2023, Cutler's new counsel moved to vacate the final dissolution order under CR 60(b)(11) because of South's depression and resulting neglect of Cutler's case. After a hearing, the trial court denied Cutler's motion to vacate because, unlike in other cases where default orders were vacated because of an attorney's complete failure to appear or otherwise participate, this case was heard on the merits at a trial. Additionally, South attended the trial and at least participated minimally in the proceedings.

Cutler appealed the denial of the motion to vacate the final dissolution order. Since Cutler appealed, a hearing officer for the WSBA entered findings of fact and conclusions of law, as well as a recommendation that South be suspended from practicing law for one year.[1] The hearing

---

[1] Cutler has filed a motion asking this court to accept additional evidence under RAP 9.11, including the WSBA disciplinary board's notice of South's suspension; the Washington Supreme Court's suspension order for South; the WSBA disciplinary board's order adopting the hearing

officer found that Cutler suffered injury as a result of South's conduct, but not serious injury because Cutler signed the response conceding the real property at issue was community property. Mot. for Additional Evid. on Rev. (Feb. 14, 2025), Ex. A at 9 (Findings of Fact (FF) 5, 6)[2]. The hearing officer found that South knowingly failed to involve Cutler in discussions about the motions regarding default and failed to obtain Cutler's consent on case strategy. FF 8. The hearing officer also found there was insufficient evidence of depression to support a mitigating factor. FF 19. Finally, the hearing officer found South delayed transmitting his case records to Cutler's new attorney. FF 10. The disciplinary board adopted the hearing officer's decision, and the Washington Supreme Court entered an order suspending South from the practice of law for one year.

ANALYSIS

Cutler argues that South's depression, and his resulting performance, was an extraordinary circumstance that deprived Cutler of representation, so the trial court erred by denying Cutler's motion to vacate the final dissolution order. While we recognize this case presents unfortunate circumstances, given the high bar for vacating a judgment under CR 60(b)(11) that arises from respect for the finality of judgments, we disagree.

We review a trial court's denial of a CR 60(b) motion to vacate for an abuse of discretion. *Barr v. MacGugan*, 119 Wn. App. 43, 46, 78 P.3d 660 (2003). CR 60(b)(11) is a catch-all provision

---

officer's decision; and the hearing officer's findings of fact, conclusions of law, and recommendation. Mot. for Additional Evid. on Rev. (Feb. 14, 2025). We conclude that the requirements of RAP 9.11 are met and we grant Cutler's motion to consider the documents listed above as additional evidence on review. We need not remand for the trial court to take the additional evidence.

[2] Subsequent cites to the findings of facts contained within exhibit A to this motion will be cited as FF.

that allows the trial court to vacate an order for any reason justifying relief that is not otherwise included in another provision of the rule. *Id.* But CR 60(b)(11) is confined to extraordinary circumstances relating to irregularities in the proceedings that are extraneous to the action. *Id.* at 48. A party must bring a CR 60(b) motion to vacate "within a reasonable time."

Generally, "an attorney's negligence or neglect does not constitute grounds for vacating a judgment under CR 60(b) because, under the law of agency, if an attorney is authorized to appear on behalf of a client, that attorney's acts are binding on the client." *Barr*, 119 Wn. App. at 46 (citing *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978)). However, Division One recognized a limited exception to this general rule in *Barr*.

In *Barr*, the trial court dismissed Barr's civil case with prejudice because her attorney failed to comply with an order compelling discovery. *Id.* at 44. Barr diligently prepared responses to discovery, and she reached out several times to her attorney but received no response. *Id.* at 45. Barr did not know that the defendant moved to compel or dismiss. *Id.* After her case was dismissed, Barr learned that her attorney suffered from severe clinical depression that caused him to neglect his practice. *Id.* Barr hired a new attorney and submitted a motion to vacate the dismissal, which the trial court granted. *Id.*

On appeal, Division One concluded that the trial court did not abuse its discretion when it vacated the dismissal. *Id.* at 48. It reasoned that there was no basis for attributing the attorney's actions to Barr because the agency relationship between attorney and client had "disintegrated to the point where as a practical matter there [was] no representation." *Id.* Additionally, Barr was a "diligent but unknowing" client. *Id.* She had no knowledge of the defendant's motions to compel or dismiss, nor did she know about her attorney's depression. *Id.* at 45. Barr also attempted to

7

contact her attorney several times over several months without a response. *Id.* When she learned of her attorney's neglect, Barr hired new counsel. *Id.* Finally, Division One noted that Barr's case was never litigated on its merits, which made dismissal premature in those circumstances. *Id.* at 47.

After *Barr*, Division Three held that a client is only excused from their attorney's actions if there has been "near-total abandonment" of the attorney client relationship. *In re Marriage of Olsen*, 183 Wn. App. 546, 557, 333 P.3d 561 (2014) (citing *Maples v. Thomas*, 565 U.S. 266, 283, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012)).

Though South's performance as Cutler's attorney violated the rules of professional conduct governing attorneys, it did not constitute near-total abandonment of Cutler's case. South failed to respond to the dissolution petition and several discovery requests for months. However, South called Cutler a day before the hearing on Wise's default judgment motion and motion in limine to inform Cutler that he had "screwed up" by failing to file a response. CP at 285. South then attended the trial readiness hearing on Cutler's behalf, asked Cutler to sign a response to Wise's dissolution petition, and filed that response. South appeared at the trial and attempted to limit the trial court's ruling, though he was unsuccessful. While South's failures violated the rules of professional conduct, this case is distinguishable from *Barr*, where an attorney entirely stopped responding to his client and the court. 119 Wn. App. at 44-45. South did not completely abandon Cutler. South continued to communicate with Cutler up to and after the trial. So the attorney-client agency relationship was not severed, and Cutler is not excused from South's actions as his representative. Additionally, unlike in *Barr*, the trial court heard this case on the merits when Wise presented testimony and evidence at trial, and the trial court entered findings of fact and conclusions of law,

as well as an order dividing property, applying the just and equitable standard. *See Olsen*, 183 Wn. App. at 554.

Cutler's briefing implies that an attorney's mental illness is always, or almost always, a basis for vacating a trial court order. However, even where a party alleges their attorney had a mental illness, the party still must show that the attorney provided effectively no representation or abandoned the case. *Id.* at 557.

Moreover, we question whether Cutler was a "diligent but unknowing client." *Barr*, 119 Wn. App. at 48. Cutler signed the response conceding that the contested property was community property, and the WSBA found that fact significant when it concluded that Cutler suffered injury, but not serious injury. The dissolution proceeding began in 2020 and the summons would have alerted Cutler to the need to file a response within 20 days. No response was filed for years, and trial did not occur until almost three years later. In January 2023, several weeks before the trial, South admitted to Cutler he "screwed up" by not filing a response, and he needed to "fix every[]thing," but Cutler did not seek new counsel at that time. CP at 285.

Cutler relies on the Ninth Circuit case, *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002), which states that a default judgment against a party may be set aside if the party's attorney was grossly negligent. In *Tani*, the Ninth Circuit held that the trial court abused its discretion by refusing to grant relief from default judgment where an attorney "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so." *Id.* at 1170. However, in *Tani*, the attorney continuously assured his client that the case was proceeding properly, thereby "deliberately deceiv[ing]" his client about his handling of the case. *Id.* at 1171. Here, South told Cutler that he had "screwed up" before the hearing on default judgment and

communicated with Cutler about other mistakes throughout the case. CP at 285. Unlike the client in *Tani*, Cutler knew about some of South's failures but continued to rely on South for representation.

Finally, Cutler did not seek reconsideration of or appeal the final orders even though entry of final orders was delayed for several weeks after Cutler became aware of the outcome. It took Cutler several weeks to retain another attorney and nearly eight months to seek to vacate the trial court's final orders, even though South admitted again to having made "a big mistake" about a week after trial. CP at 285. Although Cutler claims the delay was because he lacked awareness that South's performance was a result of mental illness, this does not excuse the delay where the more important factor is whether there was near total abandonment of representation, and Cutler was at least aware South's emotional state after his mother's death was affecting his performance.

Although the circumstances of this case are unfortunate, the trial court did not abuse its discretion by denying Cutler's motion to vacate the final dissolution order. We note that Cutler is free to pursue any available remedies against South.

## ATTORNEY FEES

Wise requests attorney fees under RCW 26.09.140. To determine whether a party receives appellate attorney fees under this statute, we exercise our discretion and consider both the merit of the issues on appeal and the parties' financial resources, "balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014). We have considered the parties' affidavits and we decline to award attorney fees.

No. 59283-5-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CHE, J.