
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) | |
| | ) | No.  40949-0-III |
| QUINBY LEE ROMAN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| And | ) | UNPUBLISHED OPINION |
| | ) | |
| GREGORY BRIAN ROMAN, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, C.J. — Gregory Roman appeals the superior court's denial of his CR 60 motion to vacate final dissolution orders.  He argues the court abused its discretion by rejecting his claims of (1) an irregularity in obtaining the orders based on deficiencies in counsel's notice of intent to withdraw, and (2) excusable neglect based on his health and substance abuse issues.  He also challenges the court's refusal to reopen the property distribution.  We reject his arguments and affirm.  The trial court acted within its discretion when it denied his motion to vacate, and Gregory's challenge to the property distribution is inadequately briefed and therefore does not warrant review.

BACKGROUND

Gregory and Quinby Lee Roman[1] were married in August 2013 and later had two children. In September 2022, Quinby filed a petition for dissolution of the marriage in Spokane County Superior Court. In the petition, she alleged the parties were residing in the marital home at the time of filing and acknowledged the existence of a post-nuptial agreement concerning the home. She also alleged that Gregory indicated he would not seek to enforce the post-nuptial agreement.

Gregory accepted service of the petition through counsel. Gregory was initially represented by Sean Johnson Law Office, and later substituted counsel to the Law Office of John Randolph. Through counsel, Gregory responded to the petition, indicating that he was living in a household separate from Quinby as of October 2022, and asking the court to enter a final dissolution decree and approve his proposed parenting plan. He also informed the court that he intended to enforce the postnuptial agreement and asked the court to divide the real property according to the agreement.

Along with his supportive declaration, Gregory submitted a copy of the post-nuptial agreement and explained that he and Quinby agreed the home was Gregory's separate property because it was purchased with money gifted to him by his family. He asked the court to enforce the agreement and order Quinby to vacate the home.

---

[1] Because the parties share the same last name, this memorandum proceeds to refer to the parties by their first names for clarity. No disrespect is intended.

*Temporary Orders*

In October 2022, the court entered a temporary restraining order while Gregory was represented by counsel. Copies of these orders are not in the record.

In January 2023, following a contested hearing, the court entered a temporary parenting plan restricting Gregory to supervised visitation with the parties' children. The temporary parenting plan required Gregory to complete, among other requirements, a domestic violence perpetrator assessment and a substance abuse evaluation. A copy of this temporary parenting plan is not in the record.

*Case Scheduling Orders and Counsel's Withdrawal*

Later that month, the trial court issued a scheduling order setting trial for August 7, 2023. Gregory does not deny receiving the scheduling order or notice of trial setting.

In June 2023, Gregory's attorney filed a notice of intent to withdraw as Gregory's counsel. The notice listed Gregory's mailing address as the marital residence and listed "gro@skytem.com" as Gregory's email address. The notice did not indicate the scheduled trial date.

Approximately one month later, the court issued an amended domestic case scheduling order continuing trial to November 6, 2023. The amended scheduling order was mailed and emailed to Gregory using the same contact information listed in the notice of intent to withdraw.

*Trial and Entry of Final Orders*

Trial commenced on November 6, 2023, without Gregory present. Quinby Roman took the stand and testified that the marriage was marred by substance abuse, domestic violence, and neglect. Quinby also testified that Gregory's family in Canada was in the uranium business and was very wealthy, estimating their worth at 50 million dollars. She indicated that Gregory has millions of dollars and resources available to him in the future and would be able to purchase another home.

Following trial, the court signed and entered the final divorce orders proposed by Quinby. The court ultimately declined to enforce the postnuptial agreement, characterized the house as community property, and awarded it to Quinby. Based on findings of neglect, child abuse, domestic violence, and an emotional problem, the trial court entered a final parenting plan restricting Gregory to supervised visits with his children every other weekend.

*Gregory's Motion to Vacate*

One year later, on November 6, 2024, through a new attorney, Gregory filed a motion to vacate the final orders pursuant to CR 60(b)(1) and CR 60(b)(11).[2] He argued that his failure to appear at trial was the result of mistake or inadvertence due to his

---

[2] Gregory's counsel mistakenly referred to the result of the trial as a default judgment in his memorandum in support of the motion to vacate. However, the trial court did not enter a default judgment. Rather, the court entered a judgment on the merits following a pro forma trial.

previous attorney's failure to notify Gregory of the trial date. He alleged that Randolph included the incorrect mailing address and email for Gregory in the notice to withdraw. Separately, Gregory contended that his excusable neglect—his struggle to maintain consistent housing and unawareness that his prior counsel had withdrawn—supported granting the motion to vacate.

In support of his motion, Gregory declared that he voluntarily left the marital home in October 2022 based on advice from his initial counsel, who warned that a restraining order would be sought if he did not leave that night. He asserted that when Randolph filed the notice of intent to withdraw, he listed the marital home as Gregory's last known address even though he had not been residing there during the representation. He further claimed that the notice contained an outdated email address he no longer had access to; and he provided Randolph with a new email address approximately one week before the notice was filed. Gregory also declared that court communications continued to be sent to the marital home, where Quinby resided, and that although he participated in two supervised visits with the children at that location before trial, Quinby did not inform him of the mailed notices or the upcoming trial date.

Finally, Gregory stated that in the year leading up to trial he experienced significant health issues, including an autoimmune skin condition requiring medical treatment, as well as mental health difficulties, financial instability, and housing insecurity. He described periods of sporadic employment, frequent travel for contract

work, and extended periods without stable housing, including living out of hotels, short-term rentals, and shelters. He asserted that these circumstances contributed to his lack of awareness of the trial date and his failure to appear.

The superior court held a hearing on Gregory's motion to vacate. At the hearing, Gregory's counsel argued that vacation of the final orders was warranted because of (1) Randolph's mistakes in failing to include the trial date and correct contact information for Gregory, and (2) Gregory's excusable neglect for not having inquired with Randolph.

Quinby's counsel responded, arguing that under *In Marriage of Olsen,*[3] attorney negligence is not a basis for relief under CR 60(b) absent total abandonment, which did not occur here, and rejected Gregory's attempt to characterize alleged notice issues as attorney error. Counsel walked through the procedural history to argue that Gregory had notice of the original trial date while represented, participated in hearings earlier in the case, and failed to show that his counsel did not receive or transmit court orders. He questioned Gregory's credibility, noting the absence of evidence supporting Gregory's claim that he provided updated contact information or lost access to his email, and argued that any failure to receive notices resulted from Gregory's own lack of diligence and failure to maintain communication.

---

[3] 183 Wn. App. 546, 333 P.3d 561 (2014).

In rebuttal, Gregory's counsel argued that Randolph's actions amounted to abandonment and a procedural irregularity under *Olsen*, such that vacation of the final orders was proper.

The court entered a written order denying Gregory's motion to vacate. The court found:

A. Neither Gregory Roman, nor his counsel, appeared for the trial scheduled on August 7, 2023, pursuant to the scheduling order entered and distributed on January 23, 2023.

B. The Court continued that trial date to November 6, 2023, by a scheduling order entered and distributed on July 20, 2023.

C. The Court finds that based on his declarations, Gregory Roman did not reach out to ascertain the status of his trial scheduled for August 7, 2023, or the case in general until July of 2024 at the earliest.

D. The Court finds that Gregory Roman does not expressly deny being given notice of the scheduled trial on August 7, 2023, concurrent with the Court distributing its first scheduling order on January 23, 2023.

E. The Court did not receive any information from Mr. Roman's previous counsel, John Randolph, evincing either affirmative notices to Mr. Roman or any breakdown in their communication, and Mr. Roman had the burden of proof in this matter.

F. The Court finds based on the declarations and the previous trial testimony that Gregory Roman's inaction regarding this legal matter is consistent with his prior inaction regarding other important legal and financial matters.

G. The Court finds that Gregory Roman was vague in his sworn declarations as to the specifics and dates of communication with his former counsel and former counsel's office staff regarding representation and notifications.

H. The Court finds that it was notified about the post-nuptial agreement during the trial, reviewed it since it was in the Court file and evaluated

testimony from Quinby Roman that Gregory Roman had promised her not to enforce that agreement.

I.  The Court finds that Quinby Roman detrimentally relied on Gregory Roman's promise not to enforce the agreement.

J.  The Court finds that it was just and equitable to award the family home to Quinby Roman in the divorce and Mr. Roman did not offer sufficient argument or evidence on why the result would be different during a second trial.

K.  In reliance on *Marriage of Olsen*, 183 Wn. App. 546 (2014 Div. III) and *Marriage* of *Souza* (unpublished 2022 Div. Ill), the Court finds that any alleged fault by Mr. Roman's counsel, John Randolph, does not constitute an irregularity, excusable neglect, or any other reason under CR 60(b) to vacate the judgment and final orders.

L.  The Court finds that Mr. Roman should either have brought forward specific information from John Randolph and/or provided detailed diligence on Mr. Roman's part to communicate with his attorney, attend the trial date scheduled in August of 2023 and generally follow up in a timely matter on this important family law matter other than the choices he made while struggling personally.

M.  For many of the reasons outlined in Mr. Roman's declarations and based on his past (in)actions detailed by Ms. Roman, the Court finds that it is most likely that Mr. Roman abandoned the family law trial scheduled in August of 2023 and it was held without him a few months later.

N.  Based on the Court's evaluation of trial testimony and evidence; and the declarations offered by the parties in this motion, the Court finds that it is unlikely that it would have reached different results at trial if Mr. Roman had appeared.

Clerk's Papers at 152-53.

Gregory timely appealed.

8

ANALYSIS

Gregory challenges the denial of his CR 60 motion to vacate, arguing the trial court abused its discretion by rejecting his claims of (1) irregularity in obtaining the judgment and (2) excusable neglect. Quinby argues the trial court's decision was within its discretion.

We review a trial court's decision on a CR 60 motion to vacate for abuse of discretion. *Little v. King*, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *In re Marriage of Tang*, 57 Wn. App. 648, 653, 789 P.2d 118 (1990).

We review whether the trial court's findings are supported by substantial evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). "Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true." *Akon*, 160 Wn. App. at 57. Unchallenged findings constitute verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). We review conclusions of law de novo and consider whether they are supported by the trial court's findings. *Littlefair v. Schulze*, 169 Wn. App. 659, 664, 278 P.3d 218 (2012).

"We do not review the trial court's credibility determinations or weigh conflicting evidence 'even though we may disagree with the trial court in either regard.'" *In re*

*Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)).

Relevant here, CR 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order.

Gregory argues the trial court abused its discretion by denying his motion to vacate because irregularities in obtaining the final orders—specifically, the deficiencies in Randolph's notice of intent to withdraw—prevented him from receiving notice of trial. He contends the circumstances of his case are distinguishable from *Olsen*[4] and *In re Marriage of Souza*.[5] We disagree.

This court has addressed whether attorney negligence can constitute an "irregularity" sufficient to warrant relief under CR 60(b)(1). *See, e.g.*, *Olsen*, 183 Wn. App. at 556-58. "'An irregularity is usually defined as a departure from some procedural rule or regulation, unrelated to the merits of the case.'" *Id.* at 557 (quoting 4 ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CR 60, author's cmt. 5, at 684 (7th ed. 2021)). "'Generally, the incompetence or neglect of a party's own attorney is

---

[4] 183 Wn. App. 546.
[5] *In re Marriage of Souza*, No. 37941-8-III (Wash. Ct. App. March 15, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/379418_unp.pdf.

not sufficient grounds for relief from a judgment in a civil action.'"  *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819, 838, 970 P.2d 803 (1999) (quoting *Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040 (1996)).

In *Olsen*, however, we recognized a narrow exception to that general rule: a client may be excused from counsel's actions if there has been "near-total abandonment" of the attorney-client relationship.  183 Wn. App. at 557.  We explained that, only where an attorney "'is not operating as [the client's] agent in any meaningful sense of the word,'" will the court "excuse the client from responsibility."  *Id*. at 558 (internal quotation marks omitted) (quoting Maples v. Thomas, 565 U.S. 266, 282, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012)).

In *Olsen*, neither the husband nor his attorney appeared for trial.  *Id*. at 550.  The trial court proceeded with a trial and entered final orders.  *Id*. at 550-51.  The husband moved to vacate arguing that there was an irregularity in obtaining the judgment under CR 60(b)(1).  *Id*. at 551.  In support of his motion, he declared he was a diligent client, had provided his attorney with evidence, had not been told about an earlier trial date, and had been affirmatively instructed by counsel not to enter the courtroom on the continued trial date because counsel wrongly believed another continuance would be granted due to counsel's medical condition.  *Id*.  The trial court denied the motion to vacate, and we affirmed, holding that although the husband demonstrated attorney negligence, he failed to demonstrate abandonment sufficient to justify relief.  *Id*. at 556-58.

The trial court did not abuse its discretion in relying on *Olsen* here. The court found that Gregory did not expressly deny receiving notice of the originally scheduled August 7, 2023 trial date; that he failed to demonstrate a breakdown in communication with Randolph; and that his inaction in this case was consistent with his prior inaction regarding other legal and financial matters. Gregory did not assign error to these findings; thus, they are verities. Those findings support the trial court's conclusion that any deficiencies in Randolph's notice of intent to withdraw did not rise to the level of abandonment.

Nor did the trial court abuse its discretion in relying on *Souza*. There, the husband appeared and answered the dissolution petition but later moved out of the family home and failed—and at times refused—to provide his wife, her attorney, or the court with an updated mailing address. Souza, No. 37941-8-III, slip op. at *2-4. Before trial, the husband's attorney filed a notice of intent to withdraw, listing the family home as the husband's last known address. *Id*. at *2-3. When the court later continued the trial date, it mailed the amended scheduling order to that address. *Id*. at *4. When the husband did not appear for pretrial proceedings or trial, the court proceeded with trial and entered final dissolution orders. *Id*. After learning of the orders, the husband moved to vacate under CR 60(b), and the trial court denied the motion. *Id*. at *5.

On appeal, the husband argued the trial court abused its discretion by denying relief because (1) his failure to appear resulted from his former attorney's mistake in

providing an incorrect address in his notice of intent to withdraw, and (2) his wife's failure to demand a joint trial management report under local court rules constituted a procedural irregularity. *Id*. at *8-11. We rejected both arguments and affirmed. *Id*. at *11. As to the first, we emphasized that the trial court did not accept that any mistake occurred and, citing *Olsen*, reiterated that an attorney's general negligence—absent abandonment—does not warrant vacating a judgment entered after trial. *Id*. at *9-10. As to the second, we held that the absence of a joint trial management report did not constitute an irregularity under CR 60(b)(1), particularly given the husband's demonstrated pattern of disengagement before counsel withdrew. *Id*. at *10-11. We noted that although the husband continued to fault others for failing to contact him, he failed to show that he made any meaningful effort to contact his wife or her counsel to ascertain the status of the case. *Id*.

As in *Souza*, the trial court here reasonably concluded that Gregory's own lack of diligence, rather than a procedural irregularity, led to his failure to appear for trial. Like the husband in *Souza*, Gregory sought relief by attributing his absence from trial to alleged deficiencies in counsel's notice of withdrawal without demonstrating that he took reasonable steps to remain engaged in the proceedings or ascertain the status of his case. The court therefore did not abuse its discretion by relying on *Souza* and concluding that Gregory failed to establish an irregularity in obtaining the judgment.

13

Gregory alternatively argues the trial court abused its discretion by denying his

motion to vacate on the basis of excusable neglect. He contends excusable neglect

justified vacating the judgment based on his mental health challenges and substance

abuse issues, and he likens his case to *In re Marriage of Gharst*.[6]

In *Gharst*, the wife filed a pro se CR 60(b) motion to vacate shortly after failing to

appear for her dissolution trial. 25 Wn. App. 2d at 754. She attributed her

nonappearance to a brain injury that was a result of a series of ministrokes that ended in a

serious stroke, leaving her with partial paralysis down the left side of her body and a

brain injury that caused difficulties with speech, concentration, and the ability to organize

her thoughts. *Id.* at 755-56. The trial court denied the motion, relying solely on the fact

that notice of trial had been sent to her mailing address and without addressing the impact

of her cognitive impairment on her ability to appear. *Id.* at 755-57, 760. On appeal, we

reversed, holding that the trial court abused its discretion by failing to apply the correct

legal standard:

> Relief from judgment based on excusable neglect requires an analysis of
> not only a litigant's mental state but also other circumstances, including
> "the danger of prejudice to the [opposing party], the length of the delay and
> its potential impact on judicial proceedings, [and] the reason for the delay,
> including whether it was within the reasonable control of the movant."
> *Pioneer Inv. Servs.*, 507 U.S. at 395, 113 S. Ct. 1489. To prevail on a
> motion to vacate based on excusable neglect, the record must reflect a

---

[6] 25 Wn. App. 2d 752, 525 P.3d 250 (2023).

> prima facie defense to the claim on trial. *Sollenberger v. Cranwell*, 26 Wn. App. 783, 785-86, 614 P.2d 234 (1980).

*Id.* at 759.

Gregory's case is distinguishable from *Gharst*. Unlike the trial court in *Gharst*, the trial court here did not deny relief based solely on the fact that notice of trial had been sent to Gregory. Rather, the court considered Gregory's explanations for his failure to appear and concluded the explanations did not establish excusable neglect.

The trial court did not abuse its discretion in denying Gregory's motion to vacate.

Finally, Gregory challenges the trial court's refusal to reopen the property distribution, arguing that awarding the marital home to Quinby resulted in a manifest injustice. But Gregory fails to support this claim with any meaningful legal analysis or citation to authority. As a result, we decline to review this issue.

RAP 10.3(a)(6) requires an appellant to present argument in support of the issues raised on appeal, including citations to relevant legal authority and to the record. In his brief, Gregory does not identify the applicable legal standard governing requests to reopen or reconsider property distributions, does not cite authority addressing manifest injustice in this context, and does not explain how the trial court's decision constituted reversible error based on authority. In fact, Gregory's argument on this issue does not include any citation to authority whatsoever. Instead, Gregory expresses dissatisfaction with the outcome of the property division and asserts that it was unequal and unjust.

Such conclusory assertions are insufficient to warrant review. Issues presented without meaningful analysis need not be considered by this court. *State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Murphy, J.